FILED IN
COURT OF CRIMINAL APPEALS

August 25, 2015

ABEL ACOSTA, CLERK

PD-0143-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/24/2015 9:24:57 PM
Accepted 8/25/2015 7:49:22 AM
ABEL ACOSTA
CLERK

**No. PD-0143-15**

# IN THE TEXAS COURT OF CRIMINAL APPEALS

## CYNTHIA AMBROSE
*Petitioner / Appellee*

### v.

## THE STATE OF TEXAS
*Respondent / Appellant*

ON DISCRETIONARY REVIEW FROM THE FOURTH COURT OF APPEALS, SAN ANTONIO
CAUSE NO. 04-13-00788-CR

APPEALED FROM THE 226TH JUDICIAL DISTRICT COURT, BEXAR COUNTY, TEXAS
CAUSE NO. 2011-CR-10002

## STATE'S BRIEF IN RESPONSE

NICOLAS "NICO" LAHOOD
Criminal District Attorney
Bexar County, Texas

S. Patrick Ballantyne
Assistant Criminal District Attorney
Bexar County, Texas
State Bar # 24053759
101 W. Nueva St., 7th floor
San Antonio, Texas 78205
210-335-2311 (phone)
sballantyne@bexar.org

**ORAL ARGUMENT GRANTED**

# IDENTIFICATION OF PARTIES AND COUNSEL

*Representing the State of Texas at Trial and on Appeal:*

S. Patrick Ballantyne
Assistant Criminal District Attorney
Bexar County, Texas
State Bar # 24053759
101 W. Nueva St., 7th floor
San Antonio, Texas 78205
210-335-2404 (phone)
210-335-2773 (facsimile)
*sballantyne@bexar.org*

*Representing Petitionerr Cynthia Ambrose at the Punishment Phase of Trial and on Appeal*

Dayna L. Jones
State Bar # 24049450
206 E. Locust Street
San Antonio, Texas 78212
210-255-825 (phone)
210-249-0116 (facsimile)
*DaynaJ33@gmail.com*

*Representing Petitioner at the Guilt-Innocence Phase of Trial*
J. Scott Sullivan
State Bar # 19483350
4 Dominion Drive, Suite 250
San Antonio, Texas 78257
210-227-6000 (phone)

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES AND COUNSEL ..................................................................1

TABLE OF CONTENTS .........................................................................................................2

INDEX OF AUTHORITIES ....................................................................................................3

ON CITATIONS TO THE RECORD .......................................................................................4

STATEMENT OF THE CASE .................................................................................................4

STATEMENT OF THE FACTS ...............................................................................................6

    POST-VERDICT PROCEEDINGS ....................................................................................13

    ON STATE'S APPEAL TO THE FOURTH COURT OF APPEALS .................................15

SUMMARY OF THE ARGUMENT .......................................................................................16

ARGUMENT ..........................................................................................................................18

   **I.** **First Ground for Review – In which Petitioner asks this Court to abandon the C.C.P. Article 36.19 / *Almanza* harm standards where a trial court grants a motion for new trial based on jury charge error.** ...................................................................................18

      **1.** **Article 36.19 statutorily mandates that the egregious harm standard be applied to review of jury charge error claimed after judgment in the trial court and on appeal.** ...................................................................................19

      **2.** **In *Igo v. State*, this Court correctly held that the *Almanza* egregious harm standard applies to review of a trial court's ruling on a motion for new trial claiming jury charge errors.** ...................................................................................21

   **II.** **Second Ground for Review – In which Petitioner contends that appellate courts must defer to a trial court's conclusion on the issue of egregious harm.** ...........................26

      **1.** **The issue of egregious harm is a mixed question of law and fact which the appellate court was correct to review *de novo*.** ...............................27

      2. The trial court did not make findings of fact or conduct a meaningful harm analysis to which the court of appeals was obliged to defer. ...............................31

   **III.** **Third Ground for Review – In which Petitioner complains that the Court of Appeals did not properly conduct its egregious harm analysis.** ...........................33

      **1.** **The court of appeals conducted a proper and thoughtful egregious harm analysis and reached the correct conclusion.** ...............................35

CONCLUSION AND PRAYER ..............................................................................................37

CERTIFICATE OF WORD COUNT ......................................................................................38

CERTIFICATE OF SERVICE ...............................................................................................38

# INDEX OF AUTHORITIES

**Cases**

*Absalon v. State*, 460 S.W.3d 158 (Tex. Crim. App. 2015) ...................................28

*Almanza v. State,* 686 S.W.2d 157 (Tex. Crim. App. 1985) ...........................passim

*Casanova v. State*, 383 S.W.3d 530 (Tex. Crim. App. 2012) .....................30, 32, 34

*Ex parte Peterson*, 117 S.W.3d 804 (Tex. Crim. App. 2003) ...............................32

*Ex parte Wheeler*, 203 S.W.3d 317 (2006) ........................................................29

*Gelinas v. State*, 398 S.W.3d 703 (Tex. Crim. App. 2013) ..............................30, 34

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) ....................27, 28, 29, 31

*Hunter v. Statew*, 955 S.W.3d 102 (Tex. Crim. App. 1997) .................................29

*Igo v. State*, 210 S.W.3d 645 (Tex. Crim. App. 2006) ...................................passim

*Loserth v. State*, 963 S.W.2d 770 (Tex. Crim. App. 1998) ...................................29

*Nava v. State*, 415 S.W.3d 289 (Tex. Crim. App. 2013) .......................................26

*Oregon v. Kennedy*, 456 S.W.667 (1982) ..........................................................29

*Rent v. State*, 982 S.W.2d 382 (Tex. Crim. App. 1998) .......................................22

*Solis v. State*, 792 S.W.2d 95 (Tex. Crim. App. 1990) ........................................34

*State v.* Ambrose, 457 S.W.3d 154 (Tex. App. – San Antonio 2015) .........16, 26, 35

*State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006) ....................................25

*State v. McKnight*, 213 S.W.3d 915 (Tex. Crim. App. 2007) ....................20, 23, 24

*Zamora v. State*, 411 S.W.3d 504 (Tex. Crim. App. 2013) ..............................19, 34

**Statutes**

Tex. Code Crim. P. Art. 36.19............................................................18, 19, 20, 26

Tex. Code Crim. P. Art. 38.14........................................................................13

Tex. Code Crim. P. Art. 44.01........................................................................25

Tex. Penal Code § 39.03 ................................................................................4

Tex. R. App. P. 21.3 .....................................................................................21

## ON CITATIONS TO THE RECORD

Throughout this brief, reference to the Reporter's Record will be indicated by the citation to the volume number, then the letters "RR," followed by the page number.  For example, (3 RR 25) refers to the 25th page of the third volume of the reporter's record.

References to the Clerk's Record will be indicated by the page number preceded by the letters "CR" for the initial Clerk's Record, "CR Supp." for the First Supplemental Clerks Record, or "CR Supp. 2nd" for the Second Supplemental Clerk's Record.  For example, (CR 51) refers to the 51st page of the initial Clerk's Record.

## STATEMENT OF THE CASE

This Court granted discretionary review of the decision of the Fourth Court of Appeals reversing the trial court's granting of a motion for new trial.  In the 226th District Court for Bexar County, Judge Sid L. Harle presiding, a jury convicted Petitioner of the offense of *Official Oppression*[1], a Class A misdemeanor.  (CR 31-32)  The trial court assessed punishment at one year confinement, probated for a term of two years, with 30 days confinement to be served as a condition of community supervision. (CR 31-32)

---

[1] Tex. Penal Code § 39.03

4

After trial, Petitioner filed her motion for new trial, which argued that a new trial should be granted due to (1) the trial court's failure to instruct the jury on the accomplice witness rule of Article 38.14 of the Code of Criminal Procedure, (2) the insufficiency of the non-accomplice corroborating evidence, (3) ineffective assistance of trial counsel, (4) the interest of justice, and (5) the cumulative effect of unspecified errors. (CR 69-90). After an evidentiary hearing, the trial court granted a new trial on the basis of its own failure to *sua sponte* instruct the jury as to the accomplice witness rule. All other grounds were denied. (6 RR 3)

The State requested findings of fact and conclusions of law from the trial court. (CR 91) Petitioner submitted proposed findings and conclusions. The State then filed objections to Petitioner's proposals (CR 94-99) and contemporaneously submitted its own proposed findings and conclusions. (CR 100-102) The trial court signed Petitioner's findings and conclusions without amendment. (CR Supp. 2nd 6-11) The State then timely filed its notice of appeal. (CR 104)

The Fourth Court of Appeals reversed the trial court's grant of a new trial in a published opinion. *State v. Ambrose*, 457 S.W.3d 154 (Tex. App. – San Antonio 2014, pet. granted). On appeal, the State contended that the trial court's grant of new trial should be vacated, because (1) the witness in question was not an accomplice, and, (2) alternatively, Petitioner was not egregiously harmed by the court's failure to instruct on the accomplice-witness rule. The court of appeals did

not reach the merits of the State's first issue and instead assumed without deciding that Petitioner was entitled to an accomplice witness instruction. 457 S.W.3d at 160. The court below then conducted the required egregious harm analysis and concluded that Petitioner was not egregiously harmed by any error resulting from the trial court's failure to include an accomplice witness corroboration instruction. 457 S.W.3d at 162.

Petitioner then sought this court's discretionary review of the court of appeals' decision. Discretionary review was granted with oral argument permitted.

## STATEMENT OF THE FACTS

The evidence presented at the trial of this case tells the story of a kindergarten teacher, Petitioner, who disciplined a five year old "bully" by directing other students to line up and strike the student so that he might know how it feels to be bullied. After hearing the evidence, the jury deliberated for 42 minutes before returning a verdict of guilty on the sole count of *Official Oppression.* (3 RR 167-68).

In May of 2012, Cynthia Ambrose (Petitioner) and Barbara Ramirez (the witness at issue on appeal) both taught kindergarten at Salinas Elementary in the Judson Independent School District in San Antonio. (3 RR 12-13) Both teachers had received training on the proper discipline of students in the classroom. (3 RR

14) They were trained that Judson I.S.D. is a non-corporal punishment district which prohibits the physical discipline of students. (3 RR 14-15) Judson I.S.D. policy expressly prohibits teachers from striking students or allowing students to strike one another as a means of discipline. (3 RR 15) To address students with behavioral issues, Salinas Elementary used a "buddy system," by which a teacher could send an unruly student to another classroom for a period of time. (3 RR 15-16) If further discipline was needed, the student would then be sent to the school's principal, Jeffrey Large, or vice-principal, Gerrie Spellmann. (3 RR 16)

On May 2, 2012, A.N. was a five year old student in Ms. Ramirez's kindergarten class. (3 RR 13) A.N. had been exhibiting disruptive behavioral problems culminating in his striking another student on the back. (3 RR 17-18) Although Ms. Ramirez had never taken A.N. to another teacher's classroom before, she decided that day to use the buddy system and escort the child to Petitioner's classroom. (3 RR 18) Petitioner had a reputation as a strong disciplinarian and was a more experienced teacher than Ms. Ramirez. (3 RR 23) Once arrived, Ms. Ramirez explained to Petitioner that A.N. had been "bullying the other student" and asked if the child could be left in Petitioner's classroom. (3 RR 19) Petitioner instructed A.N. to sit next to her desk and then repeatedly asked the child why he was bullying other students. (3 RR 19-20) When A.N. did not respond, Petitioner asked, "How would you like for other students to bully you?"

(3 RR 20) A.N. again gave no response, and Petitioner turned to the other students in the class and said, "Come on, boys and girls, let's line up and bully A.N.." (3 RR 20) A few of the students rose, and Petitioner said, "Come on, let's hit him, let's bully – let's bully him." (3 RR 20) Ms. Ramirez remembered approximately seven students striking A.N..[2] When the first students offered only a "rub" or "pat," Petitioner instructed the others to "hit him harder," and they did so. (3 RR 20-21) Finally, one girl struck A.N. hard enough that Petitioner stopped the beating. (3 RR 21)

In the course of this episode, Ms. Ramirez took no affirmative act to assist, encourage, aid, or solicit the improper discipline she witnessed. Of three witnesses who were in the classroom during the incident – Ms. Ramirez, the child A.N., and Petitioner – none described any act by Ms. Ramirez taken to promote Petitioner's mistreatment. When asked what was going through her head during the incident, Ms. Ramirez replied: "It happened so fast, I was shocked. I did not realize this was – I can't – I can't explain it, I was in a state of shock." (3 RR 21) After the incident, Ms. Ramirez returned to her classroom and shortly after sent a female student to retrieve A.N.. (3 RR 22) Ms. Ramirez did not immediately report the incident. Although she knew that the law required her to report within 48 hours, (3

---

[2] A.N. testified that he remembered 21 students hitting him (3 RR 59), while Appellee insisted that only one rogue girl struck the child. (3 RR 118)

8

RR 26) Ms. Ramirez waited a full two weeks to inform school administrators of the abuse. (3 RR 22-23). Given that Ms. Ramirez's testimony would constitute a judicial admission to the criminal offense of failing to timely report child abuse[3], the State extended her immunity from prosecution in exchange for her truthful testimony. (3 RR 26) (4 RR 24)

Ms. Ramirez was finally prompted to report the incident when, at a Friday staff meeting, it was suggested that a child with behavioral issues be placed in Petitioner's class "because Ms. Ambrose was more of a stern teacher." (3 RR 23). The next Monday, Ms. Ramirez overheard Petitioner instructing a student who was pinched by another student to "pinch him back." (3 RR 24) Ms. Ramirez then felt compelled to report the mistreatment of A.N. to the school's administration. (3 RR 25)

When Ms. Ramirez reported the incident, an administrative investigation was initiated. (3 RR 91, 107) This investigation was conducted by Principal Jeffrey Large and Vice-principal Gerrie Spellmann. After hearing Ms. Ramirez's account of the classroom abuse, Mr. Large was "very surprised" as he had "never heard of anything like this before in my 30 years of education." (3 RR 102) Petitioner was called to the administrative offices and asked about the events Ms. Ramirez had

---

[3] Texas Family Code § 261.109 provides that a professional's failure to report child abuse within 48 hours is a Class A misdemeanor or State Jail Felony, depending on the circumstances.

reported. Ms. Spellmann testified that Petitioner then freely admitted to instructing other students to hit A.N.:

> "She let us know that she had instructed her students to hit the students on the arm, but not too hard so that the student would know how it felt to be bullied." (3 RR 92) "She stated that – we asked how many students had been struck [sic] and she stated only about two or three. But the next student hit too hard and that she had it stopped." (3 RR 93)

Mr. Large also testified that Petitioner initially admitted to the mistreatment:

> "Well, of course, I asked her, you know, what had happened in the classroom, what had been reported to me and I remember her saying something that she had instructed some students to – to – or basically she told me that Ms. Ramirez had brought a student over to her class because she said the student – Ms. Ramirez had said the student was bullying. And she took the student into her classroom and she said something like making the student feel like what it was like to be bullied himself. And told us that she instructed the students to hit the other student but not hard. She said that I believe two or three students hit the student and then a fourth student hit too hard and she stopped it immediately after that." (3 RR 108)

Ms. Spellmann interviewed the children who were in the classroom that day, and – although the statements of the children did not come into evidence – she testified that these interviews confirmed Ms. Ramirez's account and Petitioner's admissions. (3 RR 94)

After Ms. Ramirez finally reported the mistreatment to school administrators, word of the incident began making its way around the school. (3 RR 66) Christine Wienstel – another teacher at Salinas Elementary – and Sharon

10

Hons – the school's librarian – both witnessed Petitioner venting her displeasure in the teachers' lounge.

Ms. Wienstel testified that Petitioner "was pissed, someone had told on her about something and that the bitch was going to come out, something to that nature." (3 RR 67-68) Petitioner also stated "that the Mexican was going to come out and that payback was a bitch." (3 RR 69)

Ms. Hons recalled encountering Petitioner in the teachers' lounge: "Ms. Ambrose walked in, I just asked her how she was doing and she said she was -- she was pissed, she was upset. And I asked her why and she just said someone had tattledtaled on her." (3 RR 74) Ms. Hons also recalled Petitioner saying, "payback was a bitch and that it was going to bring out the Mexican in her." (3 RR 75)

In addition to the testimony of the educators, the State also presented the testimony of A.N., the child-victim of Petitioner's mistreatment, and A.N.'s brothers, W.N. and B.N. Of the three brothers, only A.N. was in the classroom at the time of the mistreatment. W.N. and B.N. both heard A.N. describe the incident on the school bus later that same day.

A.N. was seven years old by the time of his testimony at trial. (3 RR 56) The child had difficulty remembering the events of the day in question, but he did remember being in trouble with Ms. Ramirez and being hit on the back by a

number of other children. (3 RR 58-59) He also remembered the hitting stopped after a girl student hit him hard. (3 RR 60)

W.N., A.N.'s older brother, was 12 years old at the time of his testimony. (3 RR 79) He testified that they rode the school bus home together and that he had a conversation with A.N. on the bus in which A.N. told him that other students hit him. (3 RR 81) B.N., 9 years old at the time of trial, told the jury that he also remembered A.N. telling him that day that a teacher told students to hit his back and that the students did. (3 RR 84)

The only witness called by the defense was Petitioner, Cynthia Ambrose. (3 RR 114) Petitioner testified that Ms. Ramirez brought A.N. to Petitioner's classroom because the child was misbehaving. (3 RR 117) Petitioner denied directing any students to strike A.N.; she recounted the events as follows:

> I turned around and told my class what [A.N.] had done and what kind of consequences that he should get. And some were saying time out, one of them did say he should get hit by the kids that he hit. So then I say, Does anybody want to show him what it feels like? And I was expecting the kids to all say yes and I would turn around and tell him, You see, would you like for us to hit you? But before I knew it one of my girls got up and hit him. And the only reason I knew is because I heard it, because I didn't see it. And when I turned around being, you know, when one gets up others will get up. There was a few that were up around her, the one that had hit [A.N.], but I was like, Get away from him. And I don't know, I mean, that's when it stopped. And it really did happen fast like Ms. Ramirez said. (3 RR 117-18)

At the close of evidence, the parties conferred with the trial court on the jury charge. (3 RR 138-40) Neither party made a request that the court instruct the jury

12

on the requirement of accomplice witness corroboration pursuant to Code of Criminal Procedure article 38.14, and no such instruction was included in the court's charge. After deliberating for 42 minutes, the jury returned a verdict of guilty.

## POST-VERDICT PROCEEDINGS

After the jury returned a verdict of guilty, the trial court ordered a pre-sentence investigation. Defendant then hired new counsel for the punishment phase of trial. On August 20, 2013, the trial court described Appellee's conduct as "absolutely the parents' worst nightmare" (4 RR 23) and sentenced Appellee to one year confinement in the Bexar County Jail, probated for a term of two years, Appellee filed her notice of appeal and motion for new trial. By her motion, Appellee claimed a new trial was warranted due to (1) the trial court's failure to instruct the jury on the accomplice witness rule of Article 38.14 of the Code of Criminal Procedure, (2) the insufficiency of the non-accomplice corroborating evidence, (3) ineffective assistance of trial counsel, (4) the interest of justice, and (5) the cumulative effect of unspecified errors. (CR 69-90).

A hearing on the motion for new trial was held on October 10, 2013. Among the witnesses called by Appellee was her trial counsel, Scott Sullivan. (5 RR 37) Through his testimony, Mr. Sullivan demonstrated an understanding of the accomplice witness rule commensurate with his 20 years as a criminal practitioner.

13

(5 RR 62-63) Mr. Sullivan did not believe that any of the testimony – by either Appellee or Barbara Ramirez – indicated that Ms. Ramirez took any affirmative act to promote the offense of *Official Oppression*. (5 RR 64) Mr. Sullivan also agreed that failing to timely report the abuse of a child was not a lesser included offense of *Official Oppression*. (5 RR 64-65) Mr. Sullivan testified that he considered requesting an accomplice witness instruction but decided against it. (5 RR 65) He reasoned that he would not be able to convince the court that Ramirez was an accomplice of law or fact, and in this case "The corroborating evidence is excellent for the State." (5 RR 65)

Moreover, Mr. Sullivan testified that the inclusion of an accomplice witness instruction would be contrary to the defense's theory that no offense ever occurred. (5 RR 66) Labeling Ms. Ramirez an accomplice would be tantamount to admitting that some offense did occur. (5 RR 66) As the following exchange reveals:

[Prosecutor]     Would asking for that accomplice witness instruction, in your professional opinion, almost telegraph to the jury that this offense did happen?

[Mr. Sullivan]   Yes.

[Prosecutor]     To have an accomplice you have to have an offense; right?

[Mr. Sullivan]   It is similar to an admission that it happened. And it was a dichotomy we faced the whole trial and that is having to say it happened because we damned Ms. Ramirez so much. So we almost would have to do that in some ways, but I didn't want to finally finish it off with another full jury charge again

14

reminding the jury that, yeah, she's -- they're partners in crime. I don't want them to -- to be partners in crime you've got to have a crime.

[Prosecutor]        So would asking for an accomplice witness instruction in your professional assessment be consistent or inconsistent with your defense theory and strategy in this case?

[Mr. Sullivan]      It would be inconsistent with all of our defenses.

(5 RR 65-66)

At the conclusion of the evidentiary hearing, the trial court granted Appellee a new trial on the basis of its failure to instruct the jury as to the accomplice witness rule. All other grounds were denied. (7 RR 3)

Following the trial court's ruling, the State requested findings of facts and conclusions of law from the trial court. (CR 91) Appellee submitted proposed findings and conclusions, and these were presented to the trial court and signed by the judge without substantive amendment. (CR 2nd Supp. 6)   Unaware of the presentment and entry of these findings and conclusions, State filed objections to Appellee's proposals (CR 94-99) and contemporaneously submitted its own proposed findings and conclusions. (CR 100-102)  The State when took appeal of the trial court's grant of a new trial.

**ON STATE'S APPEAL TO THE FOURTH COURT OF APPEALS**

On appeal in the Fourth Court of Appeals, the State claimed that the trial court erred in granting the motion for new trial for two reasons.  First, the State

contended that no accomplice-witness instruction was required because the witness in question was not an accomplice either as a matter of law or as a question of fact. Second, the State contended in the alternative that, even if the witness in question were an accomplice, Petitioner was not egregiously harmed by the absence of an accomplice witness instruction.

The court of appeals declined to address the State's first issue and instead examined whether Petitioner suffered the egregious harm required to reverse a judgment on the basis of unpreserved jury charge error. The court of appeals conducted its analysis by correctly explicating the egregious harm standard of *Almanza* and Article 36.19 of the Code of Criminal Procedure both generally and in the context of accomplice witness instructions. The court then conducted a thorough examination of the evidence presented by the both the State and defense, the opening statements and arguments, and the jury charge as given. Concluding that Petitioner was not egregiously harmed by the absence of an accomplice-witness instruction, the court of appeals reversed the trial court's grant of a new trial in a published opinion with one justice writing separately in concurrence. *State v.* Ambrose, 457 S.W.3d 154 (Tex. App. – San Antonio 2015, pet. granted).[4]

**SUMMARY OF THE ARGUMENT**

_____

[4] The opinion of the court of appeals is examined in greater detail under the State's response to Petitioner's third ground for review *infra.*

**I.**     **First Ground for Review – In which Petitioner asks this Court to abandon the C.C.P. Article 36.19 / *Almanza* harm standards where a trial court grants a motion for new trial based on jury charge error.**

Petitioner contends that "a reviewing court should defer to the lower court's factual findings and review only for an abuse of discretion." (Petitioner's Brief at 15)   This ground is without merit, because (1) it is contrary to the standard of review statutorily mandated by Article 36.19, as interpreted by this Court in *Almanza v. State*[5], and (2) the issue was decided by the clear correct precedent of this Court in *Igo v. State*[6].

**II.**     **Second Ground for Review – In which Petitioner contends that appellate courts must defer to a trial court's conclusion on the issue of egregious harm.**

In her second ground for review, Petitioner complains that the appellate court below erred by conducting an egregious harm analysis that did not defer to the trial court's findings of fact and conclusions of law.   This ground is without merit, because (1) appellate courts are never bound by a trial court's conclusion on a mixed question of law and fact that does not turn on credibility such as egregious harm; and (2) the trial court did not make findings of fact or conduct a meaningful harm analysis to which the court of appeals was obliged to defer.

---

[5] 686 S.W.2d 157 (Tex. Crim. App. 1984).
[6] 210 S.W.3d 645 (Tex. Crim. App. 2006).

**III. Third Ground for Review – In which Petitioner complains that the Court of Appeals did not properly conduct its egregious harm analysis.**

In her third ground for review, Petitioner complains that the appellate court below did not properly conduct its egregious harm analysis. This ground is without merit, because the court of appeals applied the correct standard of review, conducted a proper egregious harm analysis, and arrived at the correct conclusion that Petitioner did not demonstrate egregious harm.

## ARGUMENT

**I.    First Ground for Review – In which Petitioner asks this Court to abandon the C.C.P. Article 36.19 / *Almanza* harm standards where a trial court grants a motion for new trial based on jury charge error.**

In her first ground for review, Petitioner asks this court to abandon the *Almanza* harm standards where a trial court has granted a motion for new trial based on jury charge error and made findings of fact and conclusions of law to the effect that a defendant was egregiously harmed by the error. Petitioner contends that "a reviewing court should defer to the lower court's factual findings and review only for an abuse of discretion." (Petitioner's Brief at 15) This ground is without merit, because (1) it is contrary to the standard of review statutorily mandated by Article 36.19, as interpreted by this Court in *Almanza v. State*[7], and

---

[7] 686 S.W.2d 157 (Tex. Crim. App. 1984).

18

(2) the issue was decided by the clear correct precedent of this Court in *Igo v. State*[8].

## *Applicable Law*

1.  **Article 36.19 statutorily mandates that the egregious harm standard be applied to review of jury charge error claimed after judgment in the trial court and on appeal.**

In considering the *Almanza* harm standards, it is important to remember that *Almanza* is a case of statutory interpretation. The egregious harm standard is not simply a judicially-crafted rule of economy; it is mandated by Article 36.19 of the Code of Criminal Procedure which governs courts' review of jury charge error. "The framework in *Almanza* is not a court-made rule." *Zamora v. State*, 411 S.W.3d 504, 512 (Tex. Crim. App. 2013).

In authoring this court's opinion in *Almanza*, Judge Clinton provided a very thorough and well-researched history of this court's adventures in jury charge review which culminated in the legislature's enactment of Article 36.19. "After researching Texas statutory and decisional law from 1857 forward, we have concluded that Article 36.19 actually separately contains the standards for *both* fundamental error and ordinary reversible error." 686 S.W.2d at 171. Where error is preserved by timely objection, the defendant need only demonstrate *some harm*. *Id.* "On the other hand, if no proper objection was made at trial and the accused

---

[8] 210 S.W.3d 645 (Tex. Crim. App. 2006).

must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial' – in short 'egregious harm.'" *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

Although the *Almanza* Court in interpreting Article 36.19 described the statute's particular harm standards as ambiguous and requiring resort to extra-textual sources for interpretation, there is no ambiguity in the text as to *when* Article 36.19 will apply. By its plain terms – in referring to situations involving charge error where a "judgment shall not be reversed unless…" – Article 36.19 applies when a court is being asked to reverse the judgment in a criminal case. Accordingly, the *Almanza* harm standards are mandated by Article 36.19 when a defendant is asking a trial court to reverse the judgment of a jury[9] by a motion for new trial and where either party seeks appellate review the trial court's ruling. *See Igo v. State*, 210 S.W.3d 645 (Tex. Crim. App. 2006) and *State v. McKnight*, 213 S.W.3d 915 (Tex. Crim. App. 2007), *discussed infra.*

---

[9] Although the article is entitled, "Review of Charge on Appeal," it is the plain meaning of the text of a statute that governs interpretation, and the statute's title is an extratextual consideration that will only be considered as a factor to resolve ambiguity. *See Chase v. State*, 448 S.W.3d 6, 11 (Tex. Crim. App. 2014); Tex. Gov't Code § 311.023. .

**2.** **In *Igo v. State*, this Court correctly held that the *Almanza* egregious harm standard applies to review of a trial court's ruling on a motion for new trial claiming jury charge errors.**

In *Igo v. State*, 210 S.W.3d 645 (Tex. Crim. App. 2006), this Court confronted the following issue and arrived at the stated conclusion:

> When a defendant complains on appeal that the trial court erroneously denied a motion for new trial that alleged a claim of jury charge error, is he entitled to have the underlying jury-charge error reviewed under a different harm standard than would have applied to that error absent a motion for new trial? We answer that question "no."

210 S.W.3d at 646.

Petitioner's first issue in the instant case may be stated identically with only a couple of modifications:

> When the **State** complains on appeal that the trial court erroneously **granted** a motion for new trial, is the defendant entitled to have the underlying jury-charge error reviewed under a different harm standard than would have applied to that error absent a motion for new trial?

This issue should also be answered in the negative on the basis of the reasoning set forth in the *Igo* decision. Presiding Judge Keller's majority opinion decisively held that the proper standard of review for jury charge error first raised in a motion for new trial "is Article 36.19, as construed in *Almanza*." 210 S.W.3d at 647. Although Igo (like Petitioner here) contended that review was limited to an abuse of discretion standard pursuant to Rule of Appellate Procedure 21.3, this Court soundly rejected that argument. "A statute cannot be superseded by a rule," and "when a statute directs what treatment an appellate court must give to a

21

particular type of error, a rule of appellate procedure cannot be employed to circumvent the statutory requirement." *Id., citing Rent v. State*, 982 S.W.2d 382 (Tex. Crim. App. 1998).

The *Igo* opinion also recognized that the egregious harm standard – besides being mandated by Article 36.19 – advances the "policy of encouraging the timely correction of errors" embodied by statutes and rules governing review of jury charge error. 210 S.W.3d at 647. In an appeal from a trial court's ruling on a motion for new trial, this policy is not merely a rule of economy but necessary to a properly functioning system of appellate review:

> If appellant were correct, defendants would no longer be required to preserve a jury-charge error at trial so long as the issue was raised in a motion for new trial because *any* error in the charge could be said to "misdirect" the jury. […] Appellant's reasoning would essentially exempt any jury-charge error from any sort of harmless-error analysis even when the erroneous instruction might have been *fixed* had the defendant brought the error to the trial court's attention. Such a result would essentially eviscerate the two- tiered harm analysis required by statute and do away with the requirement that *egregious* harm be shown when the defendant has failed to timely urge an objection.

> *Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006) (emphasis

in original).

Following the *Igo* decision, this Court was presented with a circumstance such as the instant case, where the State appealed the trial court's grant of a new trial based on jury charge error. *McKnight v. State*, 213 S.W.3d 915 (Tex. Crim.

22

App. 2007) (per curiam),[10]  This Court remanded the case to the court of appeals, because that court did not have the benefit of the *Igo* opinion, where the Court "held that the *Almanza* harm analysis does apply to jury-charge errors presented in a motion for new trial."  *McKnight*, 213 S.W.3d at 916.  The *McKnight* opinion informs the Court's decision in the instant appeal both as a concise reification of the holding in *Igo* and an application of the *Almanza* standards where a trial court *grants* a defendant's motion for new trial.

### *Application of Law*

After assuming but not deciding that the trial court erred in failing to *sua sponte* instruct the jury on the accomplice witness rule, the appellate court below was required by Article 36.19, as construed in *Almanza*, to conduct an egregious harm analysis.  Like the appellant in *Igo*, Petitioner is attempting to use the motion-for-new-trial procedure to circumvent the harm analysis mandated by Article 36.19.  She makes no claim that Article 36.19 is unconstitutional or superseded by some other authority.  Neither does she propose any standard of review to replace *Almanza* other than the abuse of discretion standard already rejected in *Igo*.

Petitioner distinguishes *Igo* from the present case by pointing out that the defendant in that *Igo* was denied his motion for new trial whereas Petitioner was

---

[10] Petitioner describes *McKnight* as a case where the trial court denied the motion for new trial.  (Petitioner's Brief at 11)  That is incorrect.

23

granted hers. Exactly why she believes this materially distinguishes the standards of review or deference to be applied is unclear, but Petitioner essentially argues that *it's different when it's the defendant who wins below*. This argument disregards both the reasoning in *Igo* and its straightforward application in *McKnight* to a circumstance identical to her own – where the State appealed the trial court's grant of a new trial on unpreserved jury charge instruction error.

Petitioner contends that the trial court's entry of findings of fact and conclusions of law necessitate the complete deference of appellate courts to the trial court's ultimate conclusion on egregious harm. However – as fully briefed under the State's response to Petitioner's second ground for review *infra* – the trial court in this case did not make any findings of fact related to credibility or demeanor to which the appellate court was obliged to defer. If a trial court's egregious harm analysis could ever obviate any aspect of a review by a higher court, this is not that case.

Although abandoning the *Almanza* egregious harm standard would certainly benefit this Petitioner in this appeal, this Court's decision must be more globally considerate of the consequences of such a radical policy shift. It can be safely assumed that most claims of jury charge error brought by way of a motion for new trial are overruled by the trial court. Where those claims were not raised before the jury was charged, the trial court's denial of the motion for new trial carries a

conclusion – either explicit or implicit – that the defendant did not suffer egregious harm. If Petitioner gets her way from this court, such defendants would be essentially forestopped in raising their claims of charge error on appeal, for – even if error can be demonstrated – the appellate court would be bound to defer to the trial court's determination that egregious harm occurred. Such a scheme would place defendants in the awkward and precarious position of either (1) raising the issue in a motion for new trial and risking foreclosure of meaningful appellate review, or (2) saving the issue for their direct appeal and forgoing the opportunity to develop a record in support of their claims at the hearing on their motion for new trial.

In a circumstance such as this one – where the State appeals the trial court's grant of a new trial based on unpreserved jury charge instruction – the State is entitled by Article 44.01 of the Code of Criminal Procedure to meaningful appellate reviewed of claimed errors. *See State v. Cullen*, 195 S.W.3d 696, 698 (Tex. Crim. App. 2006) (Trial court may not frustrate "meaningful review of the decision to grant a motion to suppress.") Yet, resorting to an abuse of discretion or highly deferential standard of review, as Petitioner prays of this Court, would deprive the State of the statutorily mandated entitlement of meaningful review of when a trial court grants a new trial.

25

Justice Barnard's concurring opinion below in this case expressed concern "about the effect of the standard on the trial court's authority to grant a new trial in a case such as this." 457 S.W.3d 154, 162 (Barnard, J., concurring). Thid concern recognizes what this Court has already acknowledged: that egregious harm "is a difficult standard to meet." [11] *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). However, the limitation that this standard places on a trial court's authority is not a judicially-crafted rule which may be set aside in equity; it is a statutory mandate that must be applied correctly by all courts – including trial courts – when reviewing whether unpreserved jury charge error warrants reversal of a jury's judgment.

The *Almanza* harm standards are required by Article 36.19 – both at the trial court level and on and appellate review – and they may only be modified or obviated by an enactment of the legislature. Accordingly, Petitioner's first ground for review is without merit and should be overruled.

## II. Second Ground for Review – In which Petitioner contends that appellate courts must defer to a trial court's conclusion on the issue of egregious harm.

---

[11] The fact that egregious harm is difficult standard (and thus more easily decided) is presumably why the appellate court below chose it as the dispositive issue instead of deciding the substantive issue of whether an accomplice witness instruction was even required.

In her second ground for review, Petitioner complains that the appellate court below erred by conducting an egregious harm analysis that did not defer to the trial court's findings of fact and conclusions of law. This ground is without merit, because (1) appellate courts are never bound by a trial court's conclusion on a mixed question of law and fact that does not turn on credibility such as egregious harm; and (2) the trial court did not make findings of fact or conduct a meaningful harm analysis to which the court of appeals was obliged to defer.

**1. The issue of egregious harm is a mixed question of law and fact which the appellate court was correct to review *de novo*.**

Texas courts do not seem to have addressed the level of deference owed to a trial court's ruling on the issue of whether a defendant suffered egregious harm as result of jury charge error. This is understandable as trial courts are not often called upon to engage in harm analyses. However, applying principals explained by this Court in *Guzman v. State*[12] and subsequent cases, it is clear that egregious harm involves an application of facts to the law, also called a "mixed question of law and fact." Because the egregious harm analysis in this case does not turn on a question of credibility or demeanor, the court of appeals was correct to review it *de novo*.

[12] 955 S.W.2d 85 (Tex. Crim. App. 1997)

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997), identified three types of questions which a reviewing court may be called upon to answer which are not "pure" questions of law:

**First**, there are questions which entail the trial court's determination of historical facts or which are based on an evaluation of credibility and demeanor. Appellate courts should afford almost total deference to a trial court's findings on such issues. *Guzman*, at 89.

**Second**, there are applications of law to fact, also known as "mixed questions of law and fact," "where the resolution turns on an evaluation of credibility or demeanor." In reviewing such credibility-based mixed questions, appellate courts afford similarly great deference to a trial court's rulings where it assessments are supported by the record. *Id.*

**Third**, a there are mixed questions of law and fact where the ultimate question does not turn on a matter of credibility or demeanor. These questions appellate courts review *de novo*. *Id.* "Mixed questions of law and fact that do not turn on the credibility of the witness, as well as all purely legal questions will be reviewed de novo." *Absalon v. State*, 460 S.W.3d 158, 162 (Tex. Crim. App. 2015)

Of course the *Guzman* Court's promulgation of these three classes of review is more descriptive than categorical; "This is about as comprehensive a statement

28

of the applicable standards as we can provide." *Guzman* at 89. For example, a question may involve a credibility assessment but not "turn on" that assessment. In further clarification, this Court has also said that a "question 'turns' on an evaluation of the credibility of the witnesses when the testimony of one or more witnesses, if believed, is <u>always</u> enough to add up to what is needed to decide the substantive issue." *Loserth v. State*, 963 S.W.2d 770, 774 (Tex. Crim. App. 1998) (emphasis in original); *citing Hunter v. Statew*, 955 S.W.3d 102, 105 n.4 (Tex. Crim. App. 1997). "But the fact that credibility and demeanor are factors, even important factors, in the trial court's assessment does not necessarily mean the mixed question falls within the second category identified in Guzman." *Loserth v. State*, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998).

Petitioner relies on this Court's decision in *Ex parte Wheeler*, 203 S.W.3d 317 (2006), and the Supreme Court's decision in *Oregon v. Kennedy*, 456 S.W.667 (1982), for the proposition that the court of appeals and this Court should defer to the conclusion of egregious harm reached by the trial court. However, both *Wheeler* and *Kennedy* presented issues that turned on a trial court's determination that a prosecutor did not act in bad faith when causing a mistrial. The analyses in both cases came down to the trial judge being in a better position to gauge the credibility of the prosecutor's assertion that his intent in asking an improper question was not to goad the defense into requesting a mistrial. In such a

29

circumstance, deference to the trial court's credibility determination is absolutely justified.

The egregious harm analysis is a different animal entirely. Like other standards of harm, it is naturally an appellate standard of review. In situation like this one – where a trial court is called upon to consider whether a defendant was egregiously harmed by jury charge error – the analysis sits in a limited remove from its natural appellate environment. Although credibility and demeanor may be factors informing the analysis, it will be a rare situation where the question turns on such findings.

In conducting an egregious harm analysis, "courts evaluate harm by taking into account (1) the entire jury charge; (2) the state of the evidence, including contested issues; (3) arguments of counsel; and (4) any other relevant information contained in the record as a whole." *Gelinas v. State*, 398 S.W.3d 703, 705-06 (Tex. Crim. App. 2013). In the context of accomplice-witness instruction error, "the reviewing court must take the entire record into account to assess whether the jury, had it been properly instructed on the law requiring corroboration of accomplice-witness testimony, would have found the corroborating evidence so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Casanova v. State*, 383 S.W.3d 530, 534 (Tex. Crim. App. 2012).

While this analysis may involve assessments of the relative strength corroborating evidence insomuch as it tends to connect the defendant to the offense, it does not *turn on* an assessment of credibility or demeanor. Thus, the trial court will not generally be so better positioned that the appellate court must afford it the total deference urged by Petitioner. Accordingly, egregious harm falls within the third category of *Guzman* questions, and the court of appeals was correct to review the question *de novo*.

## 2. The trial court did not make findings of fact or conduct a meaningful harm analysis to which the court of appeals was obliged to defer.

In this case, the findings of fact and conclusions of law drafted by Petitioner and adopted by the trial court did not contain any egregious harm analysis or any facts which would inform an egregious harm analysis. (CR Supp. 2nd 6-11) The adopted findings and conclusions recite some law applicable to the egregious harm analysis and summarily conclude that Petitioner was caused egregious harm by the failure of the court to instruct the jury on the accomplice witness rule. (CR Supp. 2nd 10) And, that is it. There are no findings of fact informing the egregious harm analysis, and there are no credibility determinations whatsoever.

In the absent of explicit findings, Petitioner contends that the trial court made "implicit" findings to which the court of appeals was obliged to defer. However, she does not identify these implicit findings except to imply herself that

31

the trial court must have found the testimony of all of the State's corroborating witnesses "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive."[13] (Petitioner's Brief at 15). This assertion is contrary to a fair reading of the record on the whole and the swift verdict rendered by the jury. Moreover, appellate courts are under no obligation to defer to a trial court's implicit findings where they cannot be discerned from the record:

> Although reviewing courts should also grant deference to 'implicit factual findings' that support the trial court's ultimate ruling, they cannot do so if they are unable to determine from the record what the trial court's implied factual findings are.

*Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003)

To obtain deference from the appellate courts in an analysis as involved as egregious harm, a trial court must actually conduct such an analysis and enter findings of fact relevant to its conclusions. Merely stating that a defendant was egregiously harmed is a bare conclusion of law that can not serve to frustrate the reviewing function of the courts of appeals. The reality of this case is that the trial court did not actually engage in a meaningful egregious harm analysis. The court of appeals did and its holding should be affirmed. Accordingly, Petitioner's second ground for review is without merit and should be overruled.

---

[13] *Casanova v. State*, 383 S.W.3d 530, 534 (Tex. Crim. App. 2012).

**III. Third Ground for Review – In which Petitioner complains that the Court of Appeals did not properly conduct its egregious harm analysis.**

In her third ground for review, Petitioner complains that the appellate court below did not properly conduct its egregious harm analysis. This ground is without merit, because the court of appeals applied the correct standard of review, conducted a proper egregious harm analysis, and arrived at the correct conclusion that Petitioner did not demonstrate egregious harm.

*Applicable Law*

As discusses *supra*, where a defendant fails to preserve jury charge error on an issue which the trial court is required by law to instruct the jury on, reviewing courts are to apply the *egregious harm* standard announced in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984). The tenets of the egregious harm standard has become very familiar to appellate jurists and advocates in the last 30 years.

Under the *Almanza* standard, a defendant muse demonstrate that she suffered actual, rather than merely theoretical, harm from jury charge error. *Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999). Errors that result in egregious harm are those that affect "the very basis of the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory." *Ngo v. State*, 175 S.W.3d 738, 749 (Tex. Crim. App. 2005).

With regard to accomplice-witness instructions, this Court "has definitively held that the procedural framework of *Almanza* applies to accomplice-witness instructions, both as a matter of law and fact[.]" *Zamora v. State*, 411 S.W.3d 504, 512 (Tex. Crim. App. 2013). "Under *Almanza*, courts evaluate harm by taking into account (1) the entire jury charge; (2) the state of the evidence, including contested issues; (3) arguments of counsel; and (4) any other relevant information contained in the record as a whole." *Gelinas v. State*, 398 S.W.3d 703, 705-06 (Tex. Crim. App. 2013). "[T]he reviewing court must take the entire record into account to assess whether the jury, had it been properly instructed on the law requiring corroboration of accomplice-witness testimony, would have found the corroborating evidence so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Casanova v. State*, 383 S.W.3d 530, 534 (Tex. Crim. App. 2012). This should not be confused with the analysis for legal sufficiency of the evidence supporting a conviction. This Court has "long held that corroborative evidence need not be legally sufficient in itself to establish a defendant's guilt." *Casanova*, at 538. However, the failure to give an accomplice witness instruction will not cause egregious harm if other evidence standing alone would be sufficient to sustain a conviction. *Solis v. State*, 792 S.W.2d 95, 98 (Tex. Crim. App. 1990).

## *Application of Law*

**1. The court of appeals conducted a proper and thoughtful egregious harm analysis and reached the correct conclusion.**

In rendering its opinion that Petitioner was not egregiously harmed by the absence of an accomplice-witness instruction, the court of appeals conducted a considerate analysis, adhering to the correct applicable standards of law. *State v. Ambrose*, 457 S.W.3d 154, 160-162 (Tex. App. – San Antonio 2015, pet. granted).

The court of appeals below began its analysis by narrowing the issue to the one disputed element of the offense: whether Petitioner intended that the other children strike A.N. "We therefore focus our analysis on the evidence 'tending to connect' [Petitioner's] intent to the intent alleged in the charge – that [Petitioner] intended that other students strike A.N. 457 S.W.3d at 160-161.

The court below then proceeded with an examination of the state of the evidence and noted foremost that "The non-accomplice evidence in the record is relatively strong." *Id.* at 161. The court observed that Petitioner initially admitted to directing the students to strike A.N. when questioned by her principal and vice-principal. Later, at trial, Petitioner denied directing the hits but testified that she asked the students whether the class should show A.N. what it feels like to be bullied. The court correctly noted that both of these admissions *tended to connect* Petitioner to the identified requisite intent. *Id.*

The court below next observed that the "jury charge and the State's arguments emphasized the strength of the corroborating evidence and the weakness

35

of [Petitioner's] contradictory testimony. *Id.* The State focused on the corroborating nature of the witness testimony presented in its case while the defense argued that Ms. Ramirez was a "psychopathic liar." The jury's swift rendering of a guilty verdict indicates that they found the theory of corroboration advanced by the State to be persuasive. Thus, the court below concluded that the jury would not have found the State's case "clearly and significantly less persuasive had the jury been instructed on the accomplice-witness rule." *Id.* at 161-162.

Although Petitioner complains of the contradictory testimony presented by A.N. – a six year old child testifying about events that occurred over a year earlier – that the court of appeals deliberately avoided reliance on A.N.'s testimony in evaluating the relative strength of the corroborating evidence. Even setting aside the testimony of Ms. Ramirez (the alleged accomplice witness) and A.N. the corroborating evidence tending to connect Petitioner with the offense was "relatively strong" and more than tended to connect Petitioner to the alleged offense.

The detailed and considered egregious harm analysis conducted by the court of appeals stands in stark contrast to the lack of analysis on the part of the trial court. The court of appeals applied the proper standards of law in a considerate manner and reached the correct conclusion that Petitioner was not egregiously

harmed by the absence of an accomplice-instruction. Accordingly, Petitioner's third ground for review is without merit and should be overruled.

## CONCLUSION AND PRAYER

BY THE FORGOING REASONS AND AUTHORITIES, the State of Texas prays this Honorable Court affirm the decision of the Fourth Court of Appeals. Should this court find merit in Petitioner's issues, the State prays that this case be remanded to the Fourth Court of Appeals so that that court may consider the undecided issue of whether the witness in question was actually an accomplice to Petitioner's criminal conduct.

NICOLAS "NICO" LAHOOD
Criminal District Attorney
Bexar County, Texas



S. Patrick Ballantyne
Assistant Criminal District Attorney
Bexar County, Texas
State Bar # 24053759
101 W. Nueva St., 7th floor
San Antonio, Texas 78205
210-335-2277 (phone)
sballantyne@bexar.org

## CERTIFICATE OF WORD COUNT

The undersigned counsel certifies pursuant to Texas Rule of Appellate Procedure 9.4(i)(2)(B), that the State's Brief in Response filed this day contains 9,126 words. Counsel relies for his certification on the word count of the computer program used to prepare this document: Microsoft Word 2013.

_____
S. Patrick Ballantyne

## CERTIFICATE OF SERVICE

I, S. Patrick Ballantyne, hereby certify that a true and correct copy of this Brief was transmitted this 24th day of August, 2015, to Dayna L. Jones (daynaj33@gmail.com), attorney of record for Petitioner, by email and electronic service through a court-approved eFiling service.

_____
S. Patrick Ballantyne